IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-02455-REB-BNB

CHARLES C. CLEMENTS,

Plaintiff,

v.

THOMAS C. MILLER,
JANIS E. CHAPMAN, and
KATHERINE GRIER,

Defendants.

___

**ORDER**

___

This matter is before me on **Defendant Katherine Grier's Motion for Rule 11 Sanctions** (the "Motion for Sanctions"), filed February 28, 2005. For the following reasons, the Motion is GRANTED.

## I. BACKGROUND

The plaintiff filed his Complaint with Jury Demand (the "Complaint") on November 26, 2004. The plaintiff's claims arose out of an Adams County domestic relations proceeding wherein defendant Chapman was the presiding state court magistrate, defendant Miller was the attorney for the plaintiff, and defendant Grier was the opposing counsel.

The Complaint was confusing, at best, and was replete with conclusory and self-serving allegations. The plaintiff asserted numerous frivolous claims under a laundry list of authorities: "R.C. 1979"; 42 U.S.C.A. § 1983; 42 U.S.C.A. § 1985; 42 U.S.C.A. § 1986; 18 U.S.C.A. § 241;

18 U.S.C.A. § 242; 18 U.S.C.A. § 872; 18 U.S.C.A. § 1621; 18 U.S.C.A. § 1001; 18 U.S.C.A. § 572; 18 U.S.C.A. § 1512; 18 U.S.C.A. § 1951(B)(2); 18 U.S.C.A. § 1341; 18 U.S.C.A. § 1343; 18 U.S.C.A. § 875(c); C.R.S. 18-8-704; C.R.S. 18-8-707; C.R.S. 18-3-207; C.R.S. 18-5-114; and C.R.S. 18-3-207. *Complaint*, ¶ 6. The allegations against defendant Grier were largely unintelligible.

All three defendants filed motions to dismiss the claims. On July 22, 2005, the claims against Grier and Miller were dismissed on the following bases:[1]

### Rooker-Feldman Doctrine

The Rooker-Feldman doctrine is derived from 28 U.S.C. § 1257 which provides that federal review of state court judgments can be obtained only in the United States Supreme Court. Kenmen, 314 F.3d at 473. The Rooker-Feldman doctrine "prohibits a lower federal court from considering claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment." Id. (internal quotations and citations omitted). Although the Complaint was largely unintelligible, some of the plaintiff's claims against Grier and Miller appeared to seek redress for injuries caused by the judgment in the state court proceeding. Consequently, to the extent the Complaint sought redress for injuries actually and proximately caused by the state court judgment, the claims were dismissed as barred by the Rooker-Feldman doctrine.

---

[1] In addition, the claims against defendant Chapman were dismissed for lack of subject matter jurisdiction.

### Claims for Violations of 42 U.S.C. § 1983

"Under Section 1983, liability attaches only to conduct occurring under color of law. Thus, the only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995) (internal quotations omitted). A private citizen can be liable for state action where the "private party is a willful participant in joint action with the State or its agents." Id. at 1453 (internal quotations omitted). The Complaint contained only conclusory allegations of collusion between Grier and a state official; it contained no factual allegations to support a reasonable inference that defendant Grier was a state actor as contemplated by section 1983. The plaintiff's response to Grier's motion to dismiss repeated the same conclusory allegations of collusion. As a result, the plaintiff's section 1983 claims were dismissed.

### Claims for Violations of 42 U.S.C. §§ 1985 and 1986

The Complaint asserted claims under 42 U.S.C. §§ 1985 and 1986. Section 1985 provides in pertinent part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to

3

> injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(1).

This statute is narrowly construed, as explained by the circuit court:

> The case law has defined the elements of a claim under this statute. The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. The evolving law has clarified these elements. Firstly, a valid claim must, of course, involve a conspiracy. Secondly, however, § 1985(3) does not apply to all tortious, conspiratorial interferences with the rights of others, but rather, only to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus. The other class-based animus language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias. In fact, the Supreme Court has held that it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause.

Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (internal quotations and citations omitted).

The Complaint was devoid of any allegations of racial or class-based discriminatory animus and, therefore, failed to state a claim for relief under section 1985.

Section 1986 provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to

4

> do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

42 U.S.C. § 1986.

As with section 1985, the Complaint did not contain any allegations pertaining to the substance of section 1986 and, therefore, failed to state a claim for relief under section 1986.

### Claims Under "R.C. 1979"

The Complaint asserted claims under "R.C. 1979." *Complaint*, ¶¶ 6, 22, 23, 27, 28, 32, 35, 37, 40, 43, 46, and 49. The plaintiff did not attempt explain the origin of "R.C. 1979," and my research revealed no legal support for a civil action based on "R.C. 1979."

### Claims Under Title 18 of the United States Code

The Complaint asserted that "[t]he neglects of each of the Defendants" violated the following statutes: 18 U.S.C.A. § 241; 18 U.S.C.A. § 242; 18 U.S.C.A. § 872; 18 U.S.C.A. § 1621; 18 U.S.C.A. § 1001; 18 U.S.C.A. § 572; 18 U.S.C.A. § 1512; 18 U.S.C.A. § 1951(B)(2); 18 U.S.C.A. § 1341; 18 U.S.C.A. § 1343; 18 U.S.C.A. § 875(c). *Complaint*, ¶ 6. The plaintiff did not have a private right of action under any of these statutes:

1. Section 241 criminalizes conspiracies to violate a person's rights under the Constitution or the laws of the United States. 18 U.S.C. § 241. Section 242 makes it a crime to wilfully deprive persons under color of law of their rights under the constitution or laws of the United States. 18 U.S.C. § 242. These sections do not form a basis for civil liability. Kelly v. Rockefeller, 69 Fed.Appx. 414, 415-16, 2003 WL 21386338 (10th Cir. June 17, 2003).

2. Section 872 makes extortion by officers or employees of the United States a federal offense. This section applies only as against officers or employees of the United States. 18 U.S.C. § 872. The plaintiff did not allege that the defendants are officers or employees of the United States. Moreover, section 872 does not provide a private cause of action. Gipson v. Callahan, 18 F. Supp. 662, 668 (W.D. Tx. 1997).

3. Section 1621 makes perjury a federal crime. 18 U.S.C.§ 1621. There is no implied right of action under section 1621. Roemer v. Crow, 993 F. Supp. 834, 837 (D. Kan. 1998), *aff'd* 162 F.3d 1174, 1998 WL 777064 (10th Cir. Oct. 27, 1998).

4. Section 1001 criminalizes certain fraudulent acts. 18 U.S.C. § 1001. There is no private right of action under section 1001. Federal Sav. & Loan Ins. Corp. v. Reeves, 816 F.2d 130, 138 (4th Cir. 1987).

5. Section 1512 criminalizes the obstruction of justice. 18 U.S.C. § 1512. Section 1512 does not provide a private cause of action. Gipson v. Callahan, 18 F. Supp. 662, 668 (W.D. Tx. 1997).

6. Section 572, 18 U.S.C., does not exist.

7. Section 1951 prohibits extortion. 18 U.S.C. § 1951. Sections 1341 and 1343 prohibit mail fraud and wire fraud. 18 U.S.C. § 1341; 18 U.S.C. § 1343. None of these statutes provide

an implied private right of action. Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 409 (8th Cir. 1999); Creech v. Federal Land Bank of Wichita, 647 F. Supp. 1097, 1099 (D. Colo. 1986).

8. Section 875(c) makes it a crime to transmit "in interstate or foreign commerce any communication containing any threat" to kidnap or injure another. 18 U.S.C. § 875(c). There is no private right of action under section 875. See Weiss v. Sawyer, 28 F. Supp.2d 1221, 1227 (W.D.Okla. 1997).

Claims Under Title 18 of the Colorado Criminal Code

The plaintiff's remaining claims were all brought pursuant to Title 18 of the Colorado Criminal Code. *Complaint*, ¶ 6. The Court declined to exercise supplemental jurisdiction over the plaintiff's remaining state-law claims. However, had the Court reached the merits of these claims, they would likely have been dismissed for the same reasons that the Court dismissed the plaintiff's claims under Title 18 of the United States Criminal Code. *Recommendation of United States Magistrate Judge*, entered June 17, 2005; *Order Adopting Recommendations of United States Magistrate Judge*, entered July 22, 2005.

## II. ANALYSIS

Defendant Grier seeks sanctions against the plaintiff for asserting civil rights violations against her when she is clearly not a state actor and for bringing claims against her under Title 18 of the United States Code and Title 18 of the Colorado Revised Statutes, neither of which provide the plaintiff a private cause of action. Pursuant to Rule 11(c), Fed. R. Civ. P., Defendant Grier served the plaintiff with the Motion for Sanctions on February 1, 2005. Defendant Grier warned the plaintiff that he had 21 days to dismiss the claims against Grier or she would file the

Motion for Sanctions in this Court. The plaintiff did not withdraw his claims against Grier.

Under Rule 11, upon presentation to the Court of any paper, a *pro se* litigant is certifying that to the best of his or her "knowledge, information, and belief, after an inquiry reasonable under the circumstances," that

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).

The requirements of Rule 11 for *pro se* parties are thoroughly addressed in Seiverding v. Colorado Bar Ass'n, 2003 WL 22400218 (D. Colo. October 14, 2003), *aff'd* 126 Fed.Appx 457 (10th Cir. Apr. 22, 2005):

> Rule 11 requires parties (or their attorneys, for those who have them) to conduct a reasonable investigation into the facts that they believe will support their claims, and into the laws that they believe will provide them with a legal basis for seeking relief from the court. Parties who file law suits on a *pro se* basis must comply with the provisions of Rule 11, the same as if they were lawyers. Fed. R. Civ. P. 11; Business Guides, Inc. v. Chromatic Communications Enter., Inc., 498 U.S. 533, 544-45, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (explaining that Rule 11 applies both to

parties who are represented by counsel and to pro se parties as well); Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1540 (10th Cir.1996) (same); Eisenberg v. University of N.M., 936 F.2d 1131, 1134 (10th Cir.1991) (same).

If the court finds that a pro se party has signed a pleading in violation of Rule 11, the court "may ... impose an appropriate sanction" upon that party. Fed. R. Civ. P. 11(c); see also Ferguson v. MBank Houston, N.A., 808 F.2d 358 (5th Cir.1986) (approving the imposition of monetary sanctions against a pro se party who filed, for the second time, the same claims against a party); Miller v. United States, 868 F.2d 236 (7th Cir.1988) (approving imposition of monetary sanctions, and approving injunction against further filings, against plaintiff who would not stop filing the same types of claims against the tax laws of the United States); Goad v. Williams, 921 F.2d 69 (5 th Cir.), cert. denied, 500 U.S. 905, 111 S.Ct. 1684, 114 L.Ed.2d 79 (1991) (approving imposition of monetary sanctions, and approving injunction against further filings, for claims that were baseless and frivolous, and returning case to trial court for imposition of additional monetary sanctions); Daniels v. Stovall, 660 F. Supp. 301 (S.D.Tex.1987) (filing of frivolous Complaint warranted payment of attorney fees as a sanction, and trial court entered order that prohibited plaintiff from filing any further cases until she had paid the attorney fees in full).

Under the provisions of Rule 11, when a party signs a pleading, the signature of that party serves as a certification that the party has conducted a reasonable inquiry into the facts and the law before the pleading was filed. The signature also serves as a certification that the investigation into the facts and law have provided the party with *both* facts *and* law that will support the claim that is being made. Id. The certification requirement mandates that "all signers consider their behavior in terms of the duty they owe to the court system to conserve its resources and avoid unnecessary proceedings." 5A C. Wright & A. Miller, Federal Practice & Procedure § 1335, ¶ 57-58 (2d ed.1990).

*Pro se* parties are entitled to have their pleadings reviewed with some measure of liberal deference accorded to their status as *pro se* parties. However, this liberal deference "does not confer a license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." In re

9

> Winslow, 132 B.R. 1016, 1019 (Bankr. D.Colo.1991) (internal citations and quotation marks omitted).
>
> The focus of Rule 11 is narrow. "It relates to the time of signing of a document and imposes an affirmative duty on each attorney and each party, represented or *pro se*, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed." Eisenberg v. University of New Mexico, 936 F.2d at 1134. Even though *pro se* litigants may not have the training and resources of an attorney, they nevertheless must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law. See Fed. R. Civ. P. 11(b); see also Danvers v. Danvers, 959 F.2d 601, 604-05 (6th Cir.1992).
>
> The Tenth Circuit has adopted the view that "an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions." White v. General Motors Corp., Inc., 908 F.2d 675, 680 (10th Cir.1990). By extension, the actions of *pro se* parties are required to be "objectively reasonable" as well.
>
> A good faith belief in the merit of an argument is not sufficient; the attorney's [or the party's] belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances. Id.
>
> The standard is one of reasonableness under the circumstances. Under this standard, the court must determine what a reasonable person in the *pro se* litigant's position would have done. "[S]ubjective good faith--that is, a pure heart but empty head--is no defense." OTR Drivers at Topeka Frito-Lay, Inc. v. FritoLay, Inc., 160 F.R.D. 146, 149 (D. Kan.1995), internal quotation marks omitted.

Id. at *27-28 (copy attached to this Order).

In his response to Grier's Motion for Sanctions, the plaintiff submits twenty-six pages of single-spaced typewritten gibberish. *Plaintiff's Reply to Defendant Katherine Grief's Motion for Rule 11 Sanctions* (the "Response"), filed April 7, 2005. The Response offers no rational explanation for asserting constitutional claims against non-state actors, for asserting claims under

10

the federal and state criminal codes, or for asserting claims for racial or class-based discrimination. Instead, the Response contains conclusory allegations that Grier wronged him in the state court domestic relations case. Amazingly, the Response characterizes the Complaint's deficiencies as minor procedural and typographical errors. *Response*, third consecutive page, ¶ 5 (describing the Complaint's deficiencies as "[a] pro se Plaintiff's small mistakes in procedure or understanding of interpretations of Rules are not sufficient to support an Application for Sanctions"); seventeenth consecutive page, the first ¶ 2 (characterizing the Complaint's deficiencies as "[a] failing in the literary style, a typographical error in a number cited, the failure to fully comply to the punctilio and proforma of local rules by a simple misunderstanding of procedure"); nineteenth consecutive page, ¶ 5d (referring to "small errors Plaintiff made in the numbering system for citations"); twenty-third consecutive page, ¶ 2 (describing the Complaint's deficiencies as "simple typographical errors"); twenty-fourth consecutive page, ¶ 9 (describing the Complaint's deficiencies as "small errors of notation or forma").

The plaintiff's focus on the woes of his state case and his characterization of the Complaint's deficiencies as "small mistakes in procedure" or "misunderstandings of the rules" evidences his stubborn refusal to acknowledge that his claims were groundless. Grier warned the plaintiff that his claims were frivolous when she served her Rule 11(c) safe harbor letter on him. Despite this warning, the plaintiff refused to withdraw the claims against her. The plaintiff was further warned by this Court that his claims were frivolous when his proposed amended complaint (which asserted the same claims but attempted to add defendant Miller's attorney as a defendant) was refused because it was prolix and tedious and asserted claims that appeared to be frivolous and vexatious. *Recommendation of United States Magistrate Judge*, entered January

11

13, 2005 (filed January 14, 2005); *Order Adopting Recommendation of United States Magistrate Judge*, entered February 18, 2005 (filed February 22, 2005). The plaintiff still did not withdraw his claims.

No reasonable person in the plaintiff's position would assert twenty baseless claims in federal court against counsel who opposed him in a state domestic proceeding, especially after being expressly warned by the attorney and the court that his claims were frivolous. Rule 11 sanctions are appropriate--not because the plaintiff's *pro se* Complaint demonstrates a mere misunderstanding of the law--but because the plaintiff is clearly motivated by a purposeful desire to harass Grier.

Grier asks for reasonable attorneys' fees as a sanction against the plaintiff, but she does not specify a dollar amount. Nevertheless, based on all of the factors I must consider in imposing a monetary sanction, a full award of attorneys' fees would not be appropriate in this case.

In determining the amount of a monetary sanction, the court must consider the reasonableness of any attorneys fees that are sought; the minimum sanction award that will serve to deter future misconduct; the offender's ability to pay; and any other factors that are appropriate under the circumstances of the case, including "the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, [and] the risk of chilling the type of litigation involved . . . ." White, 908 F.3d at 684-85.

The plaintiff attaches to his Response two letters which purport to establish his indigence. The letters are dated March 9, 2001, and they are not authenticated. Consequently, the letters fail to establish the plaintiff's current financial status. However, the record in this case does contain

an affidavit which establishes the plaintiff's financial status as of January 2005. *Request to Participate in Forma Pauperis, Docket No. 04-RB-2455 (BNB) and Affidavit* (the "Affidavit"), filed January 12, 2005.[2] The affidavit states that the plaintiff is unemployed and owes money to several individuals for unspecified debts. The affidavit also establishes that the plaintiff owns 1/4 interest in his family residence and is able to afford the luxuries of an internet connection, cable television, and webspace at a cost of $1,560.00 per year. In addition to the affidavit, I note that the plaintiff did not proceed *in forma pauperis* in this case, nor did he proceed *in forma pauperis* in a previous case he filed in this Court. *Case No. 04-RB-1093* (brought against several Arizona highway patrol officers for alleged unconstitutional conduct while conducting a traffic stop in Arizona and dismissed for lack of personal jurisdiction).[3] He paid the $150.00 filing fee in both cases. Therefore, although the plaintiff claims he is unemployed and in debt, he does have disposable income.

The amount of sanctions imposed should be the minimum amount reasonably necessary to deter the wrongdoer. White, 908 F.2d at 684-85. The Complaint in this action had no basis in law or fact. The plaintiff clearly filed this suit to harass the state court magistrate and the attorneys who were involved in his state domestic relations proceeding. He was made aware that his claims were groundless and frivolous, yet he continued to pursue them. He previously filed an action against Arizona state patrol officers and offered no argument or evidence to make a

---

[2] The motion to proceed *in forma pauperis* was denied as moot because the plaintiff had already paid his filing fee. *Order*, entered January 13, 2005 (filed January 14, 2005).

[3] "[T]he decision whether to grant Rule 11 sanctions cannot be made based on conduct in other cases." However, "[t]he offending party's litigation history is one factor which the court may consider in determining an appropriate Rule 11 sanction." White v. General Motors Corp., 977 F.2d 499, 502 (10th Cir. 1992).

13

prima facie showing that the defendants in that case were subject to the jurisdiction of this Court. *Case No. 04-RB-1093*, Recommendation of United States Magistrate Judge entered January 14, 2005; Order Overruling Objections and Adopting Recommendation of the United States Magistrate Judge, entered February 11, 2005 (filed February 14, 2005). Based on the evidence before me, I find that a $5,000.00 sanction is necessary to deter future meritless litigation, without being excessive.

IT IS ORDERED that Defendant Katherine Grier's Motion for Rule 11 Sanctions is GRANTED.

IT IS FURTHER ORDERED that sanctions for violating Rule 11 are assessed against the plaintiff and in favor of defendant Grier in the amount $5,000.00.

Dated August 29, 2005.

BY THE COURT:

_____
United States Magistrate Judge